IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABORATORY CHARTER SCHOOL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-5538 |
| | : | |
| M.R.S., by and through her Parent, S.S., | : | |
| and her Parent individually | : | |
| | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                                    **July 20, 2023**

In this case arising under the Individuals with Disabilities in Education Act ("IDEA"), middle school student M.R.S. and her parent, S.S., ("Defendants") allege Plaintiff Laboratory Charter School ("Lab Charter") failed to provide M.R.S. with a Free and Adequate Public Education ("FAPE") during fifth and sixth grade, and wrongfully excluded her from school at the start of her seventh-grade year. These three claims were the subject of two due process complaints, both adjudicated by Hearing Officer James Gerl ("H.O."). The H.O. agreed with Defendants on their exclusion and fifth-grade FAPE claims but found for Lab Charter on the sixth-grade claim. Both parties appealed, and now pending before the Court are Cross-Motions for Judgment on the Administrative Record. On review, this Court finds that the evidence presented supported the H.O.'s conclusions and will therefore affirm his decisions in full.

**Legal Standard**

The IDEA guarantees all children with disabilities a FAPE, or "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to benefit from the instruction." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995) (internal quotation marks and citation omitted). The "primary

mechanism" for delivering a FAPE is through an IEP, which must be in place for a child with a disability at the beginning of the school year. *Id.*; 34 C.F.R. § 300.323(a) An IEP must include a statement of the child's present functioning, including how their disability affects their achievement and performance, and must detail the special education services the school will provide in helping the student to meet measurable annual goals. 20 U.S.C. § 1414(d)(1)(A)(i). An IEP is developed by an "IEP team," which consists of the student's parents, a regular education teacher, a special education teacher, a specialist from the local educational agency ("LEA"), and anyone else requested to attend by a parent or the school. *Id.* § 1414(d)(1)(B). The IEP must be reviewed and updated at least annually, and a reevaluation must occur at least once every three years. *Id.* § 1414(a)(2)(B). Parents of a child with a disability have the right to request an IEE. 34 C.F.R. § 300.502(a). This is an evaluation "conducted by a qualified examiner who is not employed by the [child's Local Educational Agency]." *Id.* Upon receipt of such request, a Local Educational Agency ("LEA") must either fund the IEE or file a due process complaint. *Id.* § 300.502(b)(2). Charter schools are treated identically to public schools in the eyes of the IDEA. *Id.* § 300.209(a).

If a parent disagrees with an evaluation or the appropriateness of an IEP, they may file a due process complaint, and have the right to judicial review of its administrative resolution. 20 U.S.C. §§ 1415(b)(6); (i)(2). During the pendency of any such proceedings, "the child shall remain in the then-current educational placement." *Id.* § 1415(j). This is known as the "stay put" provision of the statute. *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996).

When a parent challenges the adequacy of a school's provision of a FAPE, a court must "(1) consider whether the school district complied with the IDEA's procedural requirements and (2) determine whether the educational program was reasonably calculated to enable the child to receive educational benefits." *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010)

(internal quotation marks and citation omitted). Thus, for a procedural violation of the IDEA to be actionable, it must "result[] in a loss of educational opportunity for the student, seriously deprive[] parents of their participation rights, or cause[] a deprivation of educational benefits." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 274 (3d Cir. 2012) (internal citation omitted).

In reviewing a dispute under the IDEA, a district court gives "due weight" to the factual findings of the administrative proceedings. *Bd. of Educ. of Henrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). This requires a "modified de novo" approach, where the court defers to the findings of the hearing officer "unless it can point to contrary nontestimonial extrinsic evidence on the record." *S.H. v. State-Operated Sch. Dist. v. City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). The court must "fully explain[] its reasons for departing from the state decision." *Id.* at 271. "The issue of whether an IEP is appropriate is a question of fact." *Id.* Conclusions of law, on the other hand, are subject to plenary review and are afforded no deference. *P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009). At no time may a court "substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Rowley*, 458 U.S. at 206.

**Factual Background**[1]

M.R.S. was diagnosed with disruptive behavior disorder at a young age.[2] While attending a public school in the School District of Philadelphia ("SDP"), she was identified as eligible for special education services.[3] On April 4, 2017, when M.R.S. was in second grade, SDP issued her

---

[1] Due to the deferential standard of review afforded to a hearing officer's factual findings, Court cites to the H.O.'s decisions. *See, e.g.*, *Coleman v. Pottstown Sch. Dist.*, 983 F. Supp. 2d 543, 554 (E.D. Pa. 2013) (citing the hearing officer's decision in reciting the facts of the case).
[2] H.O. Decision of June 28, 2022 (hereinafter "H.O.D. 6/28") at 3, ECF No. 48-22.
[3] *Id.*

an Individualized Education Plan ("IEP") under the category of Other Health Impairment ("OHI") and began providing her with learning support in the areas of literacy, math, and behavior.[4]

S.S. applied for her daughter's enrollment for fifth grade at Lab Charter in April of 2019.[5] She noted on the application that M.R.S. had an IEP, and later signed a release form to enable Lab Charter to receive M.R.S.'s records from SDP.[6] However, Lab Charter did not request these records until October of 2020, in the fall of M.R.S.'s sixth grade year.[7]

In fifth grade at Lab Charter in the fall of 2019, M.R.S. was placed in the general education classroom setting.[8] She had "very good" attendance, but her teacher observed that she struggled with reading, vocabulary, and math, and would sometimes fall asleep during class.[9] Alerted to the fact that M.R.S. needed additional support, Lab Charter began providing a few "push ins" and "pull outs" by the special education teacher.[10] It also began more regularly observing M.R.S. to determine whether she required more significant services.[11] However, Lab Charter neglected to complete a formal evaluation by the date it was due under M.R.S.'s original IEP, April 4, 2020.[12] On May 5, 2020, Lab Charter issued a new IEP for M.R.S.[13] Under the terms of the IEP, Lab Charter was to provide her with 180 minutes per week of itinerant learning support, amongst other services.[14]

---

[4] *Id.* at 3-4.
[5] *Id.* at 4.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.* at 4-5.
[10] *See id.* at 4; N.T. Mar. 30, 2022 at 174-76, ECF No. 48-8 (defining "push ins" as when a special education teacher enters a general education classroom to work with a student, and "pull outs" as when a special education teacher leaves the general education classroom with a student for specialized instruction).
[11] N.T. Mar. 30, 2022 at 192, 224-25, ECF No. 48-8.
[12] H.O.D. 6/28 at 5, ECF No. 48-22.
[13] *Id.*
[14] *Id.*

In March of 2020, the COVID-19 pandemic forced Lab Charter, like all other public schools across the country, to shift to virtual instruction.[15] For the remainder of fifth grade and all of sixth grade, M.R.S. struggled with attendance and participation during virtual learning.[16] Despite Lab Charter's extensive attempts to support her, including multiple home visits, she was absent 81 of the 178 days in the 2020-2021 school year.[17]

Unhappy with the level of learning support provided by the existing IEP, S.S. requested an IEP team meeting.[18] Lab Charter scheduled a meeting for January of 2021 and invited S.S., but she did not respond.[19] In February of 2021, S.S. sent a message through her attorney to Lab Charter, requesting it fund an independent educational evaluation ("IEE") for M.R.S.[20] An independent neuropsychologist, Dr. Mary F. Lazar, conducted an IEE from April to June of 2021.[21] Dr. Lazar concluded M.R.S. had significant academic and mental health needs, and recommended she receive additional in-school supports including side-by-side assistance from an adult and full-time access to a laptop for writing tasks.[22] Despite initially agreeing to fund the IEE, Lab Charter later refused to pay for the evaluation.[23]

S.S. was intending to use this IEE as support for her request that Lab Charter fund a private school placement pursuant to a Notice of Recommended Educational Placement ("NOREP").[24]

---

[15] *Id.*
[16] *Id.*
[17] *Id.* at 6.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 6-7.
[21] *Id.* at 7.
[22] *Id.*; *see also* IEE, Ex. I to Lab Charter's Mot. J. Admin., ECF No. 48-13.
[23] H.O.D. 6/28 at 7, ECF No. 48-22.
[24] H.O. Decision of Jan. 12, 2022 (hereinafter "H.O.D. 1/12") at 4, ECF No. 48-20.

She began considering private school placements for M.R.S., who participated in a number of "shadow days" at Wyncote Academy in August of 2021.[25]

In the summer before M.R.S.'s seventh grade year, Lab Charter Lab Charter scheduled an IEP meeting for September 14, 2021.[26] However, this meeting never occurred. On September 1, Lab Charter's guidance counselor sent an email to S.S. apparently referencing an earlier phone call where S.S. told the school M.R.S. would be transferring to Wyncote Academy.[27] The guidance counselor asked S.S. to return M.R.S.'s laptop to the school.[28] The principal, cc'ed on the initial email, wrote "thanks so much," to which S.S. replied "no problem."[29] S.S. apparently believed this exchange referred to what would happen to the laptop *if* M.R.S. ended up being transferred as a result of the IEP/NOREP process.[30]

On September 3, an attendance official for Lab Charter emailed S.S. asking her to complete the necessary withdrawal forms.[31] S.S. responded in an attempt to rectify the "huge mix up" with M.R.S.'s enrollment, and contacted the principal as well.[32]

On September 7, counsel for Lab Charter sent S.S.'s attorney an email stating that he had been advised M.R.S. was withdrawing, and requested confirmation and completion of the transfer forms.[33] S.S.'s attorney responded immediately, writing "No, [M.R.S.] is not transferring. [S.S.] was looking at private school so that we would know what to ask for at our meeting . . . . We still want the meeting. [M.R.S.] is still enrolled at [Lab Charter]."[34] The attorney for Lab Charter

---

[25] *Id.*
[26] *Id.*
[27] *Id.* at 4-5.
[28] *Id.* at 5.
[29] *Id.*
[30] *See id.*
[31] *Id.* at 6.
[32] *Id.*
[33] *Id.* at 5.
[34] *Id.* (citing Parent Ex. 6, ECF No. 25-8).

responded that he would advise his clients of S.S.'s demands.[35] On September 10, S.S.'s lawyer

sent counsel for Lab Charter an email confirming a phone conversation earlier that day.[36] He once

again clearly confirmed that M.R.S. would not be unenrolling.[37]

On September 10, S.S. emailed Lab Charter's principal about transportation for M.R.S.[38]

The principal responded the same day that the school had added M.R.S. to the transportation list,

but it might take a couple of days for service to start and requesting S.S. bring M.R.S. to school

until that happened.[39] A few days later, S.S. again directly emailed the principal and another

official at the school.[40] She complained that she had been attempting to contact the school to

resolve outstanding transportation issues, to no avail.[41] Forwarded the message by the school's

principal, Lab Charter's lawyer yet again took this as an opportunity to suggest that M.R.S. was

transferring.[42] He responded to S.S. that transportation was a citywide issue which she would likely

continue experiencing at M.R.S.'s new school.[43] And again, both S.S. and her lawyer corrected

him, stating that M.R.S. would not be disenrolling or transferring.[44]

Although the school year had begun a week earlier, M.R.S. came to school for the first

time on September 13, staying for the full day.[45] That afternoon, counsel for Lab Charter emailed

S.S.'s attorney cancelling the IEP meeting the next day because M.R.S. was withdrawing.[46] He

---

[35] *Id.*

[36] *Id.* at 6.

[37] *Id.* ("[M.R.S.] is still enrolled in Lab Charter, has not transferred out of the charter[,] and has no intentions of doing so . . . . We will be meeting with you and the [school] on the 14th." (emphasis in original email)).

[38] *Id.*

[39] *Id.* (citing Parent Ex. 11, ECF No. 25-8).

[40] *Id.*

[41] *Id.*

[42] *See id.*

[43] *Id.*

[44] *Id.* at 7-8 ("[M.R.S.] is a student at [Lab Charter]. [M.R.S.] is not and will not be withdrawn.").

[45] *Id.*; *see also* N.T. Dec. 9, 2021 at 34, ECF No. 25-5.

[46] H.O.D. 1/12 at 6-7, ECF No. 48-20.

noted M.R.S. had attended school that day without a uniform, saying she was leaving for a new school.[47] S.S.'s attorney responded that M.R.S. was still enrolled and requested the IEP meeting go on as scheduled.[48]

On September 14, M.R.S. went to school as usual, where the CEO of Lab Charter, Dr. Amanda Coleman-Hill, observed her without a proper uniform.[49] Knowing M.R.S. had "due process issues," Dr. Coleman-Hill contacted Lab Charter's lawyer.[50] That day, counsel for Lab Charter emailed S.S.'s attorney that M.R.S. had come to school without being presently registered, and S.S. needed to come pick her up.[51] S.S.'s lawyer then called S.S. and told her M.R.S. was being "put out" and needed to be retrieved from school.[52] When S.S. arrived at Lab Charter, the principal told her M.R.S. was not being put out and was still a student, but the school's attorney was forcing the principal to send her home.[53] The IEP meeting scheduled for September 14, 2021, never occurred.[54] Beginning on that date, M.R.S. was excluded from school, prompting Defendants to file their first due process complaint.

**Procedural Background**

On September 23, 2021, Defendants filed a due process complaint alleging Lab Charter was wrongfully excluding M.R.S. from school in violation of the Individuals with Disabilities Act ("IDEA").[55] They sought M.R.S.'s reinstatement, as well as compensatory education for any school time missed.[56]

---

[47] *Id.* at 7.
[48] *Id.*
[49] *Id.*
[50] *Id.* at 8-9.
[51] *Id.* at 9.
[52] *Id.*
[53] *Id.*
[54] *Id.*
[55] Due Process Compl., ECF No. 25-12.
[56] *See id.*

After a hearing, on December 14, 2021, the H.O. issued an Order agreeing with S.S. and concluding that M.R.S.'s appropriate "stay put" placement was the itinerant learning support program at Lab Charter, as specified by the May 5, 2020 IEP.[57] Lab Charter appealed, and the H.O. issued a final Order affirming his decision on January 12, 2022.[58] He ordered Lab Charter to provide M.R.S. with compensatory education for the days of school missed, beginning on September 14, 2021.[59] Lab Charter appealed the H.O.'s decision to this Court on February 7, 2022.[60]

On January 28, 2022, Defendants filed a second due process complaint, alleging Lab Charter had deprived M.R.S. of a FAPE in violation of the IDEA during the 2019-2020 and 2020-2021 school years.[61] They complained that, during her fifth grade year, Lab Charter failed to develop or implement an IEP as required by law, and that during sixth grade, the IEP that was in place was not reasonably calculated to provide M.R.S. with educational benefit.[62]

The H.O. agreed in part. In his June 28, 2022 decision, the H.O. determined that Lab Charter had denied M.R.S. a FAPE during the 2019-2020 school year, but not during the 2020-2021 school year.[63] Both parties appealed this decision to federal court.[64] Defendants also brought

---

[57] H.O. Decision Dec. 14, 2021 (hereinafter "H.O.D. 12/14") at 9, ECF No. 48-18.

[58] H.O.D. 1/12 at 19-20, ECF No. 48-20.

[59] *Id.* at 19.

[60] *See* Am. Compl., ECF No. 9.

[61] *See* Due Process Compl., Civ. No. 22-3414, ECF No. 7-11. S.S. had initially included these claims in her September 23, 2021 due process complaint, but voluntarily dismissed them without prejudice so as to focus on the stay put order, due to the emergent nature of M.R.S.'s exclusion from school. *See* Stip., Ex. M of Lab Charter's Mot. J. Admin., ECF No. 48-17.

[62] *See id.*

[63] H.O.D. 6/28 at 1, ECF No. 48-22.

[64] Compl., Civ. No. 22-3414, ECF No. 1; Answer & Counterclaim, Civ. No. 22-3414, ECF No. 6.

counterclaims under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act ("ADA").[65]

On September 12, 2022, the Court consolidated the three appeals under Civ. No. 21-5538.[66] The parties agreed that, during the pendency of litigation, M.R.S. would attend Lab Charter and receive the services outlined in the May 5, 2020 IEP.[67] Both parties have filed motions for judgment on the administrative record, which are now ripe for review.[68]

**Discussion**

The parties have raised three challenges to the H.O.'s two decisions. Lab Charter claims the H.O. erred in determining M.R.S.'s stay put placement and in finding M.R.S. was deprived of a FAPE during fifth grade. Defendants, on the other hand, disagree with the H.O.'s decision that M.R.S. was not deprived of a FAPE during sixth grade. The Court will address each of the H.O.'s challenged determinations in turn.

The H.O. found the appropriate stay put pendency placement for M.R.S. was the itinerant learning support special education program at Lab Charter, as detailed in the May 5, 2020 IEP.[69] Lab Charter argues this was error for two reasons: first, M.R.S. had withdrawn from the school

---

[65] *See* Answer & Counterclaim, Civ. No. 22-3414, ECF No. 6. Lab Charter also moves for judgment on the administrative record of M.R.S.'s Section 504 and ADA counterclaims. Defendants have asserted their rights to a jury trial on these claims and argue they cannot be resolved on the administrative record. M.R.S. Mem. Opp. Lab Charter Mot. J. Admin. 15, ECF No. 50. This Court agrees: these claims are not ripe for adjudication by this Court because they were not reviewed by the H.O. The Court cannot order judgment on the administrative record as to these claims because no administrative record exists. If Lab Charter believes M.R.S. has failed to state a claim under Section 504 or the ADA, it should move to dismiss these counterclaims under Federal Rule of Civil Procedure 12(b).

[66] Order, ECF No. 29.

[67] Stip., ECF No. 54.

[68] *See* ECF Nos. 47 and 48.

[69] H.O.D. 12/14 at 9, ECF No. 48-18.

before any proceedings under the IDEA were initiated, and second, a stay put placement does not refer to a physical location.[70] Neither argument is meritorious.

As to M.R.S.'s withdrawal, the H.O. characterizes Lab Charter's misunderstanding as a convenient and retaliatory way to avoid paying for a private school NOREP.[71] He determined that, while there "may have been some miscommunications between the student and/or the parent and school officials" about M.R.S.'s enrollment, the parent and her attorney "corrected any misunderstanding by repeated communications with the school and its lawyer."[72] Beyond the documentary evidence such as emails, the H.O. was persuaded by the testimony of S.S. and the head of school at Wyncote Academy; he found these witnesses more credible than those from the charter school.[73]

Lab Charter argues documentary evidence supports a finding that M.R.S. withdrew, including S.S.'s email stating "no problem!" in response to laptop return procedures, M.R.S.'s lack of uniform and statement to Dr. Coleman-Hill that she was transferring, and Wyncote Academy's "Admissions Department Inquiry Tracking" form.[74] Even in light of this evidence, the H.O.'s conclusion that M.R.S. had not withdrawn is still plausible, because none of it directly contradicts the documentary evidence and testimony which he found credible. *See Anderson*, 470 U.S. at

---

[70] Lab Charter Mem. Supp. Mot. J. Admin. 4, ECF No. 48-2.

[71] *See* H.O.D. 1/12 at 15-16, ECF No. 48-20.

[72] H.O.D. 12/14 at 6, ECF No. 48-18.

[73] *Id.* at 8; H.O.D. 1/12 at 18, ECF No. 48-20. When an H.O. "has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). This requires the Court to accept the H.O.'s finding unless the extrinsic evidence M.R.S. points to would "justify a contrary conclusion." *Id.* (emphasis in original). In this context, the word "justify" demands the same standard of review an appellate court gives this Court: affirmance as long as the "account of the evidence is plausible in light of the record viewed in its entirety." *Id.*; *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

[74] Lab Charter Mem. Supp. Mot. J. Admin. 5, ECF No. 48-2.

574.[75] This Court agrees with the H.O. that, at the time due process proceedings were initiated, M.R.S. remained a student at Lab Charter.

The school next argues the H.O.'s stay put order misinterpreted the IDEA by requiring a pendent placement at a specific school.[76] It is true "the stay-put provision is not construed so narrowly as to mandate the student remain in the exact physical location where he or she was schooled at the time the dispute arose." *George A. v. Wallingford Swarthmore Sch. Dist.*, 655 F. Supp. 2d 546, 550 (E.D. Pa. 2009). Instead, the IDEA defines the "then current educational placement" as the IEP functioning when the proceedings commenced. *Drinker*, 78 F.3d at 867. The H.O. acknowledged as much, explaining "stay put does not necessarily require a specific classroom or school."[77] He found, however, that Lab Charter was an "integral part" of M.R.S.'s May 5, 2020 IEP, the program in place at the time due process proceedings were initiated.[78]

The IEP does state that it will be implemented by the LEA Lab Charter, at its 54th St. school building.[79] While the particular *school* need not stay the same during the pendency of litigation, an LEA maintains an obligation to implement an IEP as long as the student is enrolled—

---

[75] As the H.O. explained, S.S. apparently interpreted the guidance counselor's email about returning M.R.S.'s laptop to apply "in the event that the student changed to a private school pursuant to the IEP/NOREP process." H.O.D. 1/12 at 5, 16-17, ECF No. 48-20. Further, the school clearly did not consider this email to have been effective as a withdrawal, because the principal continued to make transportation arrangements for M.R.S. after receiving it. *Id.* at 17. Second, M.R.S.'s lack of uniform was explained by a backorder at Walmart. *Id.* at 4. And Lab Charter has presented no documentary evidence suggesting the H.O. was wrong to discredit Dr. Coleman-Hill's testimony about sixth-grader M.R.S.'s alleged statement about her plans to transfer. *Id.* at 18. Finally, Wyncote Academy's admissions form is not persuasive evidence of withdrawal. The form contains no date of completion: it indicates an "immediate" enrollment date, but states that M.R.S. was accepted on January 3, 2021. Form, Ex. J to Lab Charter's Mot. J. Admin., ECF No. 48-14. It also says the "result" of the admissions office contacting S.S. was "student interested/funding TBD." *Id.* None of this is strong evidence of withdrawal.
[76] Lab Charter Mem. Supp. Mot. J. Admin. 5, ECF No. 48-2.
[77] H.O.D. 12/14 at 6-7, ECF No. 48-18.
[78] *Id.* at 7.
[79] IEP 21, Ex. F to Lab Charter's Mot. J. Admin., ECF No. 48-10.

and beyond that time, if the LEA wrongfully excludes the student from school. *R.B. ex rel. Parent v. Mastery Charter Sch.*, 762 F. Supp. 2d 745, 760-61 (E.D. Pa. 2010). As M.R.S. was still a student at Lab Charter at the time her mother filed the due process complaint, the H.O. did not err in issuing an order mandating a stay put placement in the itinerant learning support program described in the May 5, 2020 IEP, "to be provided at one of the campuses of the Laboratory Charter School."[80] His decision will be affirmed.

Lab Charter next challenges the H.O.'s June 28, 2022 decision that M.R.S. was deprived of a FAPE during the 2019-2020 school year, when she was in fifth grade. The issue of whether a school provided a FAPE is a question of fact. *P.P.*, 585 F.3d at 735 (citation omitted). Therefore, this Court must defer to the H.O.'s finding that M.R.S. was deprived a FAPE during the 2019-2020 school year, unless Lab Charter can point to contrary "non-testimonial, extrinsic evidence in the record" or show that "the record read in its entirety would compel a contrary conclusion." *S.H.*, 336 F.3d at 270 (citation omitted). Lab Charter has not met this burden.

First, Lab Charter blames S.S. for its failure to provide an IEP during the 2019-2020 school year, claiming the reason M.R.S. did not have an IEP in place at the beginning of the school year was S.S.'s lack of communication and involvement.[81] The H.O. found credible S.S.'s testimony that she provided Lab Charter with information about M.R.S.'s prior IEP on her enrollment forms, which themselves constitute documentary evidence of the same.[82] "On issues of credibility, the Court generally relies on the Hearing Officer who is in the best position to observe the witnesses." *J.E. v. Boyertown Area Sch. Dist.*, 834 F. Supp. 2d 240, 253 (E.D. Pa. 2011). Lab Charter points to no non-testimonial evidence suggesting S.S. in any way prevented the school from learning

---

[80] H.O.D. 12.14 at 9, ECF No. 48-18.
[81] Lab Charter Mem. Supp. Mot. J. Admin. 8, ECF No. 48-2.
[82] H.O.D. 6/28 at 13, 15, ECF No. 48-22; Parent Ex. 2, ECF No. 25-8.

about M.R.S.'s existing IEP.[83] And it was Lab Charter's responsibility to provide services "comparable to those described in [M.R.S.'s] IEP from the previous public agency" until a new IEP was adopted. 34 C.F.R. § 300.323(e).

Second, Lab Charter argues that, even if it did violate the procedural protections of the IDEA by failing to have an IEP in place at the start of the 2019 school year, relief is not warranted because there was no substantial harm caused to M.R.S.[84] Essentially, it claims the failure to provide an IEP was merely a procedural violation, which is not sufficient to show a denial of a FAPE without specific evidence of educational deprivation.[85] It alleges M.R.S.'s "significant academic improvements" during the year demonstrate she was not denied a FAPE.[86]

The H.O. soundly rejected Lab Charter's claim that a failure to develop and implement an IEP is a procedural violation, stating that this "absurd" assumption "reflects a deep misunderstanding of the special education laws."[87] However, even assuming this was only a procedural violation, it led to substantive harm as well. *See Ridley*, 680 F.3d at 274. The failure to have an IEP meeting from September 2019 through May of 2020 denied S.S. an opportunity to participate in her daughter's IEP process. *See Knable ex rel. Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 766 (6th Cir. 2001) (holding a failure to convene an IEP conference constituted

---

[83] *See* Lab Charter Mem. Supp. Mot. J. Admin. 8, ECF No. 48-2 (citing Statement of Mat. Facts ¶ 5, ECF No. 48-1 (citing only S.S.'s testimony)).

[84] Lab Charter Mem. Supp. Mot. J. Admin. 9, ECF No. 48-2.

[85] *Id.* at 10.

[86] *Id.* at 9. Lab Charter cites numerous cases in support of the contention that there can be no denial of a FAPE where a school provided some level of services during a reasonable evaluation period and academic performance improved. *See id.* As noted by Defendants, each of these cases involves students who had not yet been identified as eligible for special education services. *See, e.g.*, *J.K. v. Summit Bd. of Educ.*, Civ. No. 19-159, 2020 WL 6281719, at *10 (D.N.J. Oct. 27, 2020). Here, Lab Charter knew or reasonably should have known M.R.S. had an IEP, which required it to provide her with special education services. As an aside, the Court does not believe eight months to be a "reasonable evaluation period."

[87] H.O.D. 6/28 at 14, ECF No. 48-22.

substantive harm). This "parental involvement" harm is actionable under the IDEA. *See D.S.*, 602 F.3d at 565. And while Lab Charter was providing M.R.S. with some level of specialized instruction during this time, these services were initiated without the requisite evaluation data and were not individually designed to meet her specific goals. Lab Charter has pointed to no evidence suggesting these services—vaguely described in its briefing—constituted a FAPE. Thus, even if the failure to provide an IEP was a procedural violation, the H.O. correctly found it led to substantive harm as well.

The H.O. correctly concluded that Lab Charter denied M.R.S. a FAPE from September 23, 2019 to May 5, 2020. The decision will be affirmed and Defendants will be awarded compensatory education for this portion of M.R.S.'s fifth grade year.

Finally, the Court turns to the H.O.'s June 28, 2022 decision denying M.R.S. relief as to her sixth-grade year. First, the H.O. determined she was not deprived of a FAPE because the May 5, 2020 IEP was reasonably calculated to provide her with meaningful educational benefit.[88] Alternatively, he found that, even if M.R.S. was deprived of a FAPE, S.S.'s failure to cooperate with the IEP process would preclude recovery.[89] The Court will affirm the H.O. on the basis of parental participation.

The H.O. found S.S. unreasonably failed to respond to Lab Charter's December 2020 invitation to an IEP meeting.[90] He also noted the many attempts Lab Charter made to support M.R.S. during virtual learning and to obtain the signed meeting invitation, to no avail.[91] S.S. points to the fact that she was the one who requested the IEP meeting, hired a special education attorney,

---

[88] H.O.D. 6/28 at 16, 18, ECF No. 48-22.
[89] *Id.* at 18.
[90] *Id.*; *see also* Invitation, Ex. H to Lab Charter's Mot. J. Admin., ECF No. 48-12.
[91] H.O.D. 6/28 at 6, ECF No. 48-22.

and pursued an IEE as evidence contrary to the H.O.'s finding that her lack of participation in the process renders recovery inequitable.[92]

The H.O. based his finding on the credibility of the charter school staff and the parent at the due process hearings.[93] As explained above, when an H.O. "has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness," a court must affirm the H.O.'s finding unless it is implausible. *Shore Reg'l High Sch.*, 381 F.3d at 199; *Anderson*, 470 U.S. at 574. The H.O.'s determination that S.S. unreasonably failed to participate in the IEP process is plausible given her lack of response to Lab Charter's invitation. And the Third Circuit has explained, when a parent "disregard[s] their obligation to cooperate and assist in the formulation of an IEP," recovery is inappropriate. *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010); *see also* 34 C.F.R. § 300.148(d)(3) (limiting reimbursement for private school placement upon a finding of "unreasonableness with respect to actions taken by the parents").[94] Although S.S. did engage in the process by requesting an IEP meeting, her failure to respond to Lab Charter's invitation limited its ability to provide M.R.S. with a FAPE, so Defendants may not now complain of exactly that.

Because the Court will affirm the H.O.'s determination that M.R.S. is precluded from recovery, the Court does not address his finding that she was not denied a FAPE. Defendants are not entitled to compensatory education for the 2020-2021 school year.

**Conclusion**

---

[92] M.R.S. Mem. Opp. Lab Charter Mot. J. Admin. 14, ECF No. 50.

[93] H.O.D. 6/28 at 19, ECF No. 48-22 ("The testimony of the charter school staff was more persuasive and credible than the testimony of the student's parent concerning this issue.").

[94] Defendants argue S.S.'s failure to return the IEP invitation did not preclude the IEP team from meeting. M.R.S. Mem. Opp. Lab Charter Mot. J. Admin. 13 n.5, ECF No. 50. Although an IEP meeting *may* be conducted without a parent in attendance, an LEA is not under any obligation to do so. 34 C.F.R. § 300.322(d).

The Court will affirm the H.O.'s three decisions: that (1) Lab Charter was the appropriate stay put placement for M.R.S.; (2) M.R.S. is entitled to compensatory education for the 2019-2020 school year; and (3) M.R.S. is not entitled to compensatory education for the 2020-2021 school year.

An appropriate Order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, C.J.