IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABORATORY CHARTER SCHOOL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-5538 |
| | : | |
| M.R.S., by and through her Parent, S.S., | : | |
| and her Parent individually | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                    **May 27, 2025**

At issue before this Court is whether M.R.S., a student with disabilities, was denied a free appropriate public education ("FAPE") at Laboratory Charter School ("Lab Charter") during the 2020-2021 school year in violation of the Individuals with Disabilities Education Act ("IDEA"). Previously, this Court concluded it need not address this issue because M.R.S. and her parent, S.S., would not be entitled to relief even if M.R.S. had been denied a FAPE for that year. On appeal, the Third Circuit remanded the decision, finding the Court's conclusion premature. Now, on remand, this Court holds that M.R.S. was denied a FAPE during the 2020-2021 school year in violation of the IDEA because Lab Charter failed to reevaluate her and implemented an inadequate Individualized Education Program. The Court also finds that M.R.S. and S.S. are entitled to relief in the form of compensatory education, although the award will be reduced by the time reasonably required for Lab Charter to rectify the issue. Accordingly, M.R.S. and S.S.'s Motion for Decision and Judgment on the Administrative Record will be granted.

**BACKGROUND**

M.R.S. was diagnosed with disruptive behavior disorder at a young age, and in second grade, she was issued her first Individualized Education Program ("IEP") for additional support in

literacy, math, and behavior. Hearing Officer Decision of June 28, 2022 ("H.O.D.") at 4-5.[1] The

IEP was based on an initial evaluation report of M.R.S. completed by her previous elementary

school on April 4, 2017. *Id.* at 4. In April 2019, near the end of M.R.S.'s fourth-grade year,

M.R.S.'s mother, S.S., completed the enrollment forms for M.R.S. to attend Lab Charter the

following school year. *Id.* at 5. In the enrollment forms, S.S. noted that M.R.S. had an IEP at her

previous school. *Id.* S.S. also spoke with Lab Charter's principal about M.R.S.'s disability needs

and the past IEP, and signed a release enabling Lab Charter to obtain M.R.S.'s prior educational

records, although Lab Charter did not request the records until October 2020. *Id.*

In fall 2019, M.R.S. began fifth grade at Lab Charter. During that year, her teacher

observed M.R.S. face academic difficulties, such as in reading and math, and noted that M.R.S.

would occasionally fall asleep in class. *Id.* Despite these early warning signs, Lab Charter did not

evaluate M.R.S. nor develop an IEP for her. *Id.* Only at the end of the school year, on May 5, 2020,

did Lab Charter develop an IEP for M.R.S., highlighting her needs in reading, writing, and math;

setting two goals; putting her in a small support group for three hours a week; and establishing

weekly special education consults. *Id.* at 6. As part of that process, Lab Charter did not reevaluate

M.R.S., although she was due for her three-year reevaluation in April 2020. *Id.*

In fall 2020, M.R.S. returned to Lab Charter for sixth grade—the year at issue on remand.

The 2020-2021 school year was immensely challenging. M.R.S. struggled with virtual instruction

and was absent for 81 of 178 school days, nearly half the year. *Id.* at 7. In response, Lab Charter

staff visited M.R.S. at home to follow up on her challenges with virtual learning and to provide

---

[1]    Given the deferential standard of review afforded to a hearing officer's ("H.O.") factual findings, the Court cites to the H.O.'s decision in setting forth the facts of the case. *See, e.g.*, *Coleman v. Pottstown Sch. Dist.*, 983 F. Supp. 2d 543, 554 (E.D. Pa. 2013). The H.O.'s decision appears in the record in Civil No. 22-3414 at ECF No. 7-3. When citing to the record, the Court has adopted the pagination in the ECF header, which may differ from pagination elsewhere.

her with work packets and new laptops. *Id.* During one of the visits, S.S. informed Lab Charter staff that M.R.S. was struggling with her mental health. *Id.* School staff also attempted to engage M.R.S. through Zoom meetings and by sending a list of incomplete assignments to her mother. *Id.* Sometime during fall 2020, S.S. requested a meeting to discuss M.R.S.'s IEP. *Id.* On December 9, 2020, Lab Charter sent S.S. an invitation for a meeting scheduled for January 14, 2021, but S.S. did not respond. *Id.* In February 2021, via her attorney, S.S. requested an individualized educational evaluation ("IEE") for M.R.S. *Id.* at 7-8. From April to June 2021, Dr. Mary Lazar, an independent neuropsychologist, conducted an IEE of M.R.S., finding that M.R.S. needed additional support in school, should be classified as having a non-verbal learning disability, and had significant mental health challenges. *Id.* at 8.

On September 23, 2021, M.R.S. and S.S. filed a due process complaint against Lab Charter alleging violations of the IDEA. Due Process Compl., ECF No. 25-12. On January 28, 2022, M.R.S. and S.S. filed a second complaint—the one at issue here—alleging M.R.S was denied a FAPE during the 2019-2020 and 2020-2021 school years, her fifth- and sixth-grade years. Due Process Compl., Civ No. 22-3414, ECF No. 7-11. On June 28, 2022, H.O. James Gerl found that Lab Charter denied M.R.S. a FAPE during the 2019-2020 school year, but not during the 2020-2021 school year. The H.O. also found that even had M.R.S. been denied a FAPE during the 2020-2021 school year, her mother's alleged noncooperation precluded relief.

The parties cross-appealed to this Court, and in July 2023, this Court affirmed the H.O.'s decision in full. As is relevant here, this Court concluded it need not address whether M.R.S. was denied a FAPE during the 2020-2021 school year, agreeing with the H.O. that S.S.'s alleged failure to cooperate with the IEP process precluded any recovery. The parties then appealed to the Third Circuit Court of Appeals, which affirmed the decision in part, but remanded the case on the issue

of whether M.R.S. was deprived of a FAPE during the 2020-2021 school year, finding this Court had "too quickly denied relief" to M.R.S. without first answering this question. *Lab'y Charter Sch. v. M.R.S.*, No. 23-2473, 2024 WL 3518306, at *2 (3d Cir. July 24, 2024). The Third Circuit also directed this Court to revisit whether equitable relief is appropriate and to consider all relevant factors when doing so. *Id.* at 5. These two issues have been fully briefed and heard on remand, and the Court now turns squarely to them.

**LEGAL STANDARD**

In reviewing state administrative decisions under the IDEA, district courts are to apply a "nontraditional standard of review, sometimes referred to as 'modified de novo' review." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 268 (3d Cir. 2012) (citation omitted). This standard requires courts to make their own findings based on the preponderance of the evidence, while also giving "due weight" to the hearing officer's factual findings. *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). Affording "due weight" means that factual findings are prima facie correct, and any departures from those findings must be explained. *Id.* Credibility determinations based upon live testimony are due "special weight" and must be accepted "unless the non-testimonial, extrinsic evidence in the record would *justify* a contrary conclusion." *Id.* (citation omitted). Conclusions of law are afforded no deference and are subject to plenary review. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 735 (3d Cir. 2009).

**DISCUSSION**

In remanding this case, the Third Circuit directed this Court to evaluate whether M.R.S. was denied a FAPE during the 2020-2021 school year, and if so, to then more closely analyze whether relief is appropriate. In doing so, the Third Circuit highlighted the potential impact of Lab Charter's failure to reevaluate M.R.S. before the sixth grade, noting the school may have engaged

M.R.S. differently during the pandemic had it reevaluated her, thus making it "plausible that Lab

Charter's procedural violation caused substantive harm to M.R.S., depriving her of educational

benefit." *Lab'y Charter Sch.*, 2024 WL 3518306, at *2. With this context in mind and upon a

closer review of the record, the Court now finds that M.R.S. was denied a FAPE for the 2020-2021

school year. Additionally, the Court also finds that M.R.S. and S.S. are entitled to relief in the form

of compensatory education, although reduced by the time reasonably required for Lab Charter to

rectify the problem.

The IDEA affords children with disabilities a substantive right to a "free appropriate public

education" that is "designed to meet their unique needs and prepare them for further education,

employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *Endrew F. ex rel. Joseph F. v.*

*Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017). The primary mechanism for delivering

a FAPE is through an IEP, "the centerpiece" of the Act. *Endrew F.*, 580 U.S. at 391 (citation

omitted). The development of an IEP is a fact-intensive, individualized process meant to reflect

the unique needs of each child including their present levels of achievement and potential, and

how their disability impacts them. 20 U.S.C. § 1414(d)(1)(A)(i)(I)(aa); *Endrew F.*, 580 U.S. at

391, 399. Student evaluations are key to this individualized process. An evaluation of the child's

disability must be conducted before the creation of the first IEP, and the child must be reevaluated

at least every three years thereafter or sooner, if warranted by the child's needs as determined by

the school. 20 U.S.C. § 1414(a)(1)(A), (a)(2). The IEP team—generally consisting of the child's

parents, teachers, and a special education specialist—is required to review the IEP at least once a

year and must revise it as needed to address any lack of expected progress. *Id.* § 1414(d)(4)(A).

Parents may challenge the appropriateness of their child's IEP by bringing a due process

complaint subject to judicial review. 20 U.S.C. § 1415(b)(6), (i)(2). To determine whether a school

has denied the child a FAPE under the IDEA, a reviewing court must apply a two-prong test, determining: (1) whether the school complied with the IDEA's procedural safeguards and (2) whether the IEP was "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399. Generally, the second prong requires the IEP to enable the child to achieve passing grades and advance in school. *Id.* at 394. While the IEP need not maximize a child's potential, it must provide an education that affords "significant learning" and "meaningful benefit." *Ridley*, 680 F.3d at 269 (citation omitted).

Procedural violations of the IDEA only entitle a party to relief where the violation led to substantive harm to the child or the child's parents. *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 66 (3d Cir. 2010). Substantive harm will be found where the procedural violation (1) impeded the child's right to a FAPE, (2) significantly impeded the parents' participation rights, or (3) caused an educational deprivation. 20 U.S.C. § 1415.

During the administrative proceedings, the H.O. found Lab Charter did not deny M.R.S. a FAPE during sixth grade because her academic challenges were driven by attendance and computer issues, which Lab Charter made significant efforts to address. However, his analysis overlooked the potential impact of Lab Charter's failure to reevaluate M.R.S.—both at the three-year mark and as warranted by M.R.S.'s academic decline—and misconstrued the findings of Dr. Mary Lazar, which further revealed the underlying inadequacy of the IEP.

Under the IDEA, Lab Charter was required to reevaluate M.R.S. by April 4, 2020, when she was due for her triennial evaluation. *See* 20 U.S.C. § 1414(a)(2)(B)(ii) (requiring a reevaluation at least once every three years). The failure to reevaluate M.R.S. meant that when Lab Charter crafted M.R.S.'s IEP in May 2020, it did not have complete and up-to-date information about M.R.S.'s needs and instead relied upon a highly limited assessment from February 2020. *See* ECF

6

No. 7-10 at 23.[2] The failure to reevaluate was made worse by the fact that Lab Charter also did not

obtain M.R.S.'s prior educational records before developing the IEP, despite having been provided

a release to do so.

When M.R.S. was finally reevaluated—in an independent evaluation conducted by Dr.

Mary Lazar between April and June 2021—it became evident the IEP in place for M.R.S. was not

tailored to meet her needs. For example, Dr. Lazar noted that some of M.R.S.'s challenges were

"not evident" based on previous evaluations and that the 2021 testing revealed a "much clearer"

pattern of M.R.S.'s needs. ECF No. 7-10 at 54.[3] Dr. Lazar's report made numerous specific

findings regarding M.R.S.'s abilities, including identifying weaknesses in visual-spatial skills,

motor skills, and math; significant weaknesses in reading and writing; and mental health

challenges including social anxiety. *Id*. Based on these individualized results, Dr. Lazar

recommended a "**much higher intensity of learning support** in all academic areas" and

recommended such support be provided via an "integrated approach to curricular instruction." *Id.*

at 55 (emphasis added). Dr. Lazar also provided numerous specific suggestions regarding how to

support M.R.S. such as implementing a specialized math program, providing explicit reading

instruction using a multisensory phonic-based program, implementing a reading comprehension

goal, working one-on-one with a teacher to develop written outlines, and receiving integrated

instruction on executive functioning strategies, among other suggestions. *Id.* at 55-57. Dr. Lazar

also noted M.R.S.'s challenges in the context of virtual instruction were "not surprising" and could

be addressed with additional support. *Id.* at 56. In sum, Dr. Lazar's 22-page report revealed a

clearer image of M.R.S.'s disability needs in addition to specific strategies to address them—

strategies that may have been uncovered sooner and implemented had Lab Charter reevaluated

---

[2]    The IEP appears in the record in Civil No. 22-3414 at ECF No. 7-10, pages 18-39.
[3]    Dr. Lazar's report appears in the record in Civil No. 22-3414 at ECF No. 7-10, pages 43-64.

M.R.S. in April 2020 as statutorily required. Dr. Lazar's recommendations stand in contrast to the IEP that was in effect during M.R.S.'s sixth-grade year, which overlooked M.R.S.'s behavioral challenges, included only two learning goals, provided limited modifications and specially designed instructions, and made no reference to virtual learning. *See* ECF No. 7-10 at 17-39.

In his opinion, the H.O. dismissed Dr. Lazar's report because its "key finding . . . was that [M.R.S.] suffers from depression," which he explained was not the responsibility of Lab Charter, and because the evaluation was "based upon an improper reliance upon the category of disability." H.O.D. at 18. But the evidence in the record does not support the H.O.'s findings. While the report discusses M.R.S.'s depression, it is hardly the "key finding," and even if it were, the report still details several academic challenges facing M.R.S. that were squarely within Lab Charter's purview. The report also indicated that M.R.S.'s family "should be able to obtain assistance from [Lab Charter] to access . . . mental health supports," undermining the idea that Lab Charter had no role to play in addressing M.R.S.'s depression. ECF No. 7-10 at 55. Additionally, the H.O.'s finding that Dr. Lazar relied too heavily on the category of disability is not well-supported. While the report references disability categories, as is to be expected, the report is specific to M.R.S.'s needs and is based on a thorough evaluation of M.R.S. developed via a laundry list of tests administered to her, a review of M.R.S.'s educational records and her family and developmental history, interviews with S.S. and M.R.S., and input from school staff. While attempts to observe M.R.S. in the classroom were hindered by M.R.S.'s lack of attendance and participation, *see id.* at 47-48, Dr. Lazar was nevertheless able to make individualized conclusions about M.R.S.'s needs by relying on other methods. The characterization of Dr. Lazar's report as based on "stereotypical conclusions" is not well founded.

The H.O. also reasoned that M.R.S. had not been denied a FAPE from 2020-2021 because she was "having significant computer issues during virtual learning" and Lab Charter made "appropriate and significant efforts to correct [her] attendance/computer issues." H.O.D. at 18. But this reasoning is incomplete, as it overlooks the possibility that M.R.S.'s attendance issues were driven at least in part by her unaddressed academic needs, which could have been targeted with a higher intensity of learning support as identified by Dr. Lazar. While the Court recognizes Lab Charter's multiple attempts to engage M.R.S. during the sixth-grade year—from providing at-home work packets to repeatedly replacing M.R.S.'s laptop—the fact remains that these interventions were not guided by a complete picture of M.R.S.'s disability needs because Lab Charter had still not reevaluated M.R.S., which perhaps helps explain why those efforts were not successful. In his opinion, the H.O. overlooked the impact of the failure to reevaluate M.R.S. on her sixth-grade year, a confusing analysis considering he found that the failure to timely reevaluate M.R.S. caused her educational harm in *fifth* grade. H.O.D. at 16 ("[T]he fact that the charter school failed to timely assess the student's needs when the student was due for a reevaluation in April of 2020 caused the student to suffer educational harm."). It is unclear why the H.O. did not extend this analysis to sixth grade, despite the fact that by then, the reevaluation was even more overdue.

Even absent the findings of Dr. Lazar, M.R.S.'s lack of progress in school should have alerted Lab Charter to the urgent need for a reevaluation to better understand M.R.S.'s needs. *See* 20 U.S.C. § 1414(a)(2)(A)(i) (requiring a reevaluation where the school "determines that the educational or related service needs, including improved academic achievement and functional performance, of a child warrant reevaluation"). For example, after passing her classes in fifth grade, M.R.S.'s grades in the first marking period of sixth grade dropped to three Fs, one C, and

9

one D, a downward trend which continued for the rest of the school year. ECF No. 7-10 at 16.[4]

M.R.S. also logged an extraordinary number of absences during the sixth grade, missing 81 of 178

school days. H.O.D. at 7. S.S. informed Lab Charter that M.R.S.'s issues were tied to mental health

challenges—indicating that perhaps the issue was not just technological—further alerting Lab

Charter to the need for a reevaluation, which may have led to more effective forms of engagement

with M.R.S. *Id.*

The failure to reevaluate M.R.S.—at the three-year mark and again when her performance

plummeted in sixth grade—impeded M.R.S.'s right to a FAPE and caused an educational

deprivation. Because Lab Charter did not have an up-to-date understanding of M.R.S.'s unique

needs, the resulting IEP was not "reasonably calculated to enable [M.R.S.] to make progress

appropriate in light of [her] circumstances." *Endrew F.*, 580 U.S. at 399. The failure to meet her

needs resulted in a tragic sixth grade year, during which M.R.S. did not achieve passing grades

and missed more than half the school year. This is the kind of academic stagnation that prompted

Congress to pass the IDEA. *See id.* at 400. Some of these tragic consequences could have been

mitigated by Lab Charter.

Having found M.R.S. was denied a FAPE during the 2020-2021 school year, the Court

next addresses whether relief is appropriate. On this issue, the Court finds M.R.S. and S.S. are

entitled to equitable relief in the form of compensatory education. Under the IDEA, a court may

grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). Relief

may include attorney's fees, reimbursement for private schooling, or compensatory education, the

latter being the most common. *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601, 608 (3d Cir.

2015). Whatever the relief, courts must afford it on a case-by-case basis, *Batchelor v. Rose Tree*

---

[4]     M.R.S.'s transcript for her fifth- and sixth-grade years appear in the record in Civil No. 22-3414 at ECF No. 7-10, page 16.

*Media Sch. Dist.*, 759 F.3d 266, 277 (3d Cir. 2014), and consider all relevant factors such as whether the school was on notice about a student's unmet needs and the extent of opportunities for the school to evaluate the student. *See, e.g.*, *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 247 (2009); *Upper Darby Sch. Dist. v. K.W.*, No. 23-2650, 2024 WL 3811990, at *3 (3d Cir. Aug. 14, 2024); *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 718 (3d Cir. 2010) (considering the interests of finality and efficiency, the use of school resources, and the needs of the student and her family).

Compensatory education seeks to make up for the educational services a student should have received but was not provided. *Ferren*, 612 F.3d at 717. An award of compensatory education is appropriate where a school knew or should have known that a student's IEP was inappropriate or that the student was not receiving "more than a de minimis educational benefit," and then failed to correct the situation. *D.F. v. Collingswood Borough Bd. of Educ.*, 694 F.3d 488, 499 (3d Cir. 2012) (citation omitted). In those cases, a student is "entitled to compensatory education for a period equal to the period of deprivation, but excluding the time reasonably required for the school district to rectify the problem." *Id.*

In an earlier opinion, this Court upheld the H.O.'s finding that M.R.S. and S.S. were not entitled to relief because S.S. did not respond to Lab Charter's December 2020 invitation to a January 2021 IEP meeting, an "unreasonable and not justifiable" action. H.O.D. at 20. On appeal, the Third Circuit rejected this finding, reasoning that there are "any number of reasons a parent might miss an IEP meeting, and we are aware of no authority holding that a parent's failure to attend a *single* IEP meeting per se precludes all recovery for the denial of a FAPE." *Lab'y Charter Sch.*, 2024 WL 3518306, at *2. The Third Circuit then directed this Court to more thoroughly consider all relevant factors when considering to what extent relief is appropriate and to place less

11

weight on S.S.'s lack of response. *See id.* With this guidance in mind, the Court now finds that M.R.S. and S.S. are entitled to relief.

For one, Lab Charter was on notice about M.R.S.'s unmet needs during sixth grade given her significant number of absences and low grades, as previously discussed. M.R.S.'s declining academic performance should have alerted Lab Charter to the fact that M.R.S. was not receiving "more than a de minimis educational benefit," and the school's behavior indicated that it did know, considering the school's multiple attempts to engage M.R.S. through home visits, Zoom meetings, and emails to S.S. H.O.D. at 7. Additionally, while S.S.'s failure to respond to Lab Charter's IEP team meeting invitation hindered the IEP planning process, S.S. was otherwise an engaged parent. Indeed, it was S.S. who attempted to organize the IEP meeting in the first instance. *Id.* S.S. had also been involved in many other ways, including by informing Lab Charter about M.R.S.'s disability and prior IEP upon enrollment, signing a release for Lab Charter to obtain M.R.S.'s educational records, communicating to Lab Charter that M.R.S. was experiencing mental health challenges, participating in check-in meetings with Lab Charter throughout the school year, hiring a special education attorney, and requesting an IEE. *Id.* at 4, 6. Moreover, it is well established that Lab Charter had multiple opportunities to evaluate M.R.S.—most notably at the three-year mark in April 2020 when she was due for a triennial evaluation—and repeatedly missed those opportunities.

A review of the relevant factors indicates that recovery on equitable grounds is appropriate. In fashioning such relief, however, courts may reduce a grant of compensatory education by the "the time reasonably required for the school district to rectify the problem." *D.F.*, 694 F.3d at 499. The Court finds it appropriate to do so here. As counsel for M.R.S. and S.S. conceded during oral argument, a slight reduction in the award is appropriate to account for the beginning of the school

year, when Lab Charter may not yet have been aware of M.R.S.'s challenges. *See* Tr. Remand Hr'g 11/6/24, 29:23-30:42, 76:35-79:00, ECF No. 99. After that point, Lab Charter should have known that M.R.S.'s IEP was inappropriate and corrective action was required. Accordingly, the Court will award full days of compensatory education for the entire 2020-2021 school year, but will reduce the award by the number of school days Lab Charter was in session in September and October 2020.[5] Lab Charter argues M.R.S.'s absenteeism throughout the school year should fully preclude any relief, but the Court disagrees. While perhaps appropriate in other cases, the Court finds no justification to do so here as there is evidence to suggest the absenteeism was at least in part a result of the inadequate IEP, which could have been addressed by Lab Charter in line with the IDEA's requirements, as previously discussed.

**CONCLUSION**

Upon further review, this Court now finds that M.R.S. was denied a FAPE during the 2020-2021 school year. Moreover, the Court also finds that a review of the relevant factors reveals that relief in the form of compensatory education is appropriate, albeit reduced by the time reasonably required for Lab Charter to rectify the issue.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[5]    M.R.S. and S.S. move the Court to award compensatory education for each school day that Laboratory Charter School was in session from May 5, 2020—the date the IEP was created—to the end of the 2020-2021 school year. *See* ECF No. 95-1 at 1-2. However, in remanding the case, the Third Circuit only directed this Court to reevaluate the 2020-2021 school year, M.R.S.'s sixth grade year. The Court will therefore confine the compensatory education to that timeframe.