IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LABORATORY CHARTER SCHOOL | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-5538 |
| | : | |
| MRS, by and through her Parent SS, and | : | |
| her Parent Individually | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                    **October 9, 2025**

Defendant M.R.S., by and through her parent S.S. (M.R.S.) seek attorney's fees because she prevailed on her claim under the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1415(i)(3)(B). Plaintiff Laboratory Charter School (Lab Charter) moves for a stay of the case pending review of substantive issues from the Third Circuit to preserve judicial efficiency. In the alternative, Lab Charter requests an additional 60 days to file an opposition to Defendant's motion, as they have not had the chance to properly audit their requested fees. Because M.R.S. is a prevailing party, the Court will award M.R.S. reasonable attorneys' fees and costs totaling $469,723.10 and deny Lab Charter's motion.

**BACKGROUND**

On September 23, 2021, M.R.S. originally brought claims under the IDEA, asserting Lab Charter failed to provide her a Free and Appropriate Public Education (FAPE) for the 2019-20 and 2020-21 school years. Dkt. No. 101 at 3. On June 28, 2022, Hearing Officer James Gerl (H.O. Gerl) found Lab Charter did deny M.R.S. a FAPE during the 2019-20 year, but not the 2020-21 school year. *Id.* He also found M.R.S.'s mother to be noncompliant for the 2020-21 year, and so relief was precluded. *Id.* The parties cross-appealed the decision to this Court, which affirmed the HO's decision in July of 2023. *Id.* The parties next appealed to the Third Circuit, who

remanded the case on the issue of the 2020-21 school year. *Id.* at 3-4. The Third Circuit noted how mistakes made during 2019 may have made the challenging circumstances of the 2020-21 school year worse than it otherwise would have been for M.R.S.[1] *Id.* at 4-5.

Even while affording the "due weight" to H.O. Gerl's factual findings required by the law, the Court found a denial of FAPE for M.R.S. for the 2020-21 school year, as well as other clear errors based on the Third Circuit's directive. *See generally id.* at 4-12; *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex. Rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004). The Court also found Lab Charter's failure to review M.R.S. for an Individualized Education Program (IEP) during the 2019 school year to potentially be of substantive impact in the 2020-21 school year, as her remote learning plan may have been handled differently if said evaluation took place. *See id.* at 6-7.

## DISCUSSION[2]

Under the IDEA, courts "may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is a prevailing party." *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 850 (3d Cir. 2006) (quoting 20 U.S.C. § 1415(i)(3)(B)). The Supreme Court has held defined a "prevailing party" as being a party which has been awarded "some relief" by a court, and the Third Circuit has applied this definition to the fee-shifting provision of IDEA. *Id.* at 853 (citing *Buckhannon Bd. v. West Virginia D.H.H.R*, 532 U.S. 598, 605 (2001)). The Supreme Court

---

[1]    The 2020-21 school year at Charter Lab was virtual because of the COVID-19 pandemic, and presented significant logistical difficulties, particularly for special-needs students such as M.R.S. *See* Dkt. No. 101 at 2-3.

[2]    As a preliminary matter, Lab Charter requests a stay because the case is currently on appeal to the Third Circuit. *See* Dkt. No. 106-1 at 1. While district courts are generally divested of jurisdiction while an appeal is pending, they retain jurisdiction to resolve motions for attorneys' fees. *Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros., Inc.*, 198 F. 3d 391, 394 (3d Cir. 1999); *see also Campbell v. Royal Bank Supplemental Exec. Ret. Plan*, 646 F. Supp. 3d 629, 638-39 (E.D. Pa. 2022). Because the Court retains jurisdiction to resolve M.R.S.'s motion while the case is on appeal, the Court will not stay the motion.

has further distinguished the status of a "prevailing party" as one characterized by succeeding on a "significant issue" rather than a "technical or de minimis" one. *Id.* at 855 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.* 489 U.S. 782, 792 (1989)).

When a party is found to be "prevailing," a court may award reasonable attorneys' fees. A calculation of attorneys' fees begins with the lodestar: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The Court also allowed for full compensation if an attorney achieves "excellent" results, including "all hours reasonably expanded on the litigation." *Id.* at 435. A reasonable hourly rate should be "calculated according to the prevailing market rates in the relevant community." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *see also Washington v. Phila. Cnty. Ct. Com. Pl.*, 89 F.3d 1031, 1035-36 (3d Cir. 1996) (finding a reasonable hourly rate will be comparable to those "charged by attorneys of equivalent skill and experience performing work of similar complexity in the community"). Further, a request for fees should not result in a "second major litigation," though billing records should generally be detailed. *Hensley*, 461 U.S. at 437. In Philadelphia, the Community Legal Services (CLS) fee schedule is viewed as "a fair reflection of the prevailing market rates." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). While a helpful starting point, courts may depart from the CLS fee schedule to account for factors beyond an attorney's years of experience, including to consider specialized skills, subject matter expertise, and the level of work performed. *See Damian J. v. Sch. Dist. of Phila.*, No. 06-3866, 2008 WL 1815302, at *2 (E.D. Pa. Apr. 22, 2008) (describing the limits of CLS fee schedule and collecting cases where courts have diverged from it). The party requesting attorneys' fees bears the burden of proving the reasonableness of its request. *Id.* at *1.

But when a party requesting attorneys' fees has presumably reached this threshold, it is the party seeking an adjustment which carries "the burden of proving that an adjustment is necessary." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d. Cir. 1990). Taking this into account, the goal of courts when considering fee shifting, in general, is "rough justice, not . . . auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The Court in these cases is instructed to look at "time . . . devoted generally to the litigation as a whole," and focus on the relief achieved rather than tediously analyze litigation on a claim-by-claim basis, particularly when substantial success is achieved. *Hensley*, 461 U.S. at 435-36.

The Court first finds the result obtained for M.R.S. clears the threshold for being an "excellent" result under *Hensley*. So, M.R.S.'s attorneys are entitled to 100 percent of the hours billed for the litigation. The Third Circuit affirmed M.R.S.'s position on every substantive issue and remanded the question of whether M.R.S. was denied a FAPE for the 2020-21 school year to this Court. *See generally Lab'y Charter Sch. v. M.R.S.*, No. 23-2473, 2024 WL 3518306, at *2-3 (3d Cir. July 24, 2024). Then, this Court found a denial of FAPE for the 2020-21 school year and awarded full compensatory education reduced only by the days Lab Charter was in session for September and October 2020. *See* Dkt. No. 101 at 12-13. The small reduction being a point which counsel for both parties agreed upon during the litigation. *Id.* Based on the above procedural history, the Court finds M.R.S.'s counsel has essentially achieved all their substantive claims.

Next, the Court will address whether the billing rates were reasonable by the CLS guidelines and other appropriate metrics. Defendants seek to recover attorney's fees for a total of 720.3 hours spent on the case by partner Christine M. Gordon at rates ranging from $360.00-

$465.00,[3] 326.9 hours spent on the case by managing partner Scott Wolpert at rates ranging from $525.00-$625.00,[4] 21.6 hours spent by associate Kathleen Vermillion at rates ranging from $275.00-$345.00,[5] and 11.40 hours spent by paralegal Patricia Mueller at a rate of $215.00.[6] *See generally* Dkt. No. 104-3; Dkt. No. 104-4.  At all times, billing rates for prevailing counsel were within range or below what is provided on the CLS billing chart, and counsel for Lab Charter does not challenge this overall rate in their opposition brief.  *See* Defs. Supp. Mot. for Award Prevailing Att'y Fees Ex. 3 15-16, para. 48, Dkt. No. 104-5.  *See generally* Pl.'s Mem. L. Supp. Mot. to Defer 4-9, Dkt. No. 106-1.  The Court also finds the timesheets submitted by M.R.S.'s council were sufficiently detailed, and do not require further scrutiny.  *See generally* Dkt. No. 104-3; Dkt. No. 104-4.

Lab Charter requests a 60-day extension, arguing they lacked the opportunity to properly scrutinize the billing sheets submitted by M.R.S.'s counsel.  This sort of "auditing" goes against the principles of *Fox* and *Hensley* by turning these requests into a "second major litigation." *Hensley*, 461 U.S. at 437; *see also Fox*, 563 U.S. at 838.  In questioning the billing sheets submitted by Defendants, Lab Charter characterizes certain statements made on the billing sheets such as "analysis of witness issues and action needed for hearing" or "outline direct examination points"

---

[3] Ms. Gordon billed 192.4 hours at a rate of $360.00, 316.6 hours at a rate of $400.00, 209.30 hours at a rate of $425.00, and 2.00 hours at a rate of $465.00.  In sum, Ms. Gordon's invoice was $285,786.50.  *See* Dkt. No. 104-3; Dkt. No.104-4.

[4] Mr. Wolpert billed 242.8 hours at a rate of $525.00, 56.2 hours at a rate of $550.00, 25.7 hours at a rate of $575.00, and 2.20 hours at a rate of $625.00.  In sum, Mr. Wolpert's invoice was $174,532.50.  *See* Dkt. No. 104-3; Dkt. No. 104-4.

[5] Ms. Vermillion billed 13.10 hours at a rate of $275.00, 2.6 hours at a rate of $300.00, and 5.90 hours at a rate of $345.00.  In sum, Ms. Vermillion's invoice was $6,418.00.  *See* Dkt. No. 104-3; Dkt. No. 104-4.

[6] In sum, Ms. Mueller's invoice totaled to $2,451.00.  *See* Dkt. No 104-3.

as "vague," and requests a hearing to scrutinize the context of these statements.  Dkt. No. 106-1 at

8.  The Court finds this request to be within the realm of requesting a "second major litigation" on

the issue of billing spreadsheets that *Hensley* discourages, because Lab Charter only pulls a select

few sentences from a relatively detailed pair of billing sheets and does not identify any systemic

or glaring issues which warrant a full conference to essentially audit the billing sheets.  Dkt. No

106-1 at 8; *Hensley*, 461 U.S. at 437.

Lab Charter additionally challenges the "stay put" order as a moot issue for which fees

should be reduced, because the issue did not warrant a "change in the parties' relationship."  Dkt.

No. 106-1 at 8.  The *Hensley* court noted many civil rights cases consist of claims are based on a

"common core of facts."  464 U.S. at 435.  In these cases, "[m]uch of counsel's time will be

devoted generally to the litigation as a whole, making it difficult to divide the hours expended on

a claim-by-claim basis."  *Id.*  The Court finds this litigation advances several claims for relief on

one common set of facts, which is the educational discrimination against M.R.S prohibited by

IDEA.  *See generally* Dkt. No. 101.  In these types of cases, *Hensley* instructs attorney fee rewards

to be based on "the significance of the overall relief."  464 U.S. at 435.  The relief achieved by

counsel on behalf of M.R.S. is substantive enough to warrant full payment of time billed on the

litigation.

Therefore, the Court finds M.R.S. entitled to full attorney's fees in the amount of

$469,723.10.

**CONCLUSION**

As a prevailing party in this action, the Court will award M.R.S.'s attorneys' fees for all

hours reasonably expended on this action based on the following hourly rates: $525-625 for Mr.

Wolbert, $360-465 for Ms. Gordon, and $245-345 for Ms. Vermilion, and $215 for Paralegal Ms.

Mueller.  In sum, M.R.S. is entitled $469,723.10 in attorneys' fees. Accordingly, the Court will deny Lab Charter's Motion to Defer Ruling on The Defendants' Attorney Fee Petition, or in the Alternative, Allow an Additional 60 Days to File an Opposition.

An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.